FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 06, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DARLA M. F.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

No.   4:17-CV-05066-SMJ

**ORDER RULING ON MOTIONS
FOR SUMMARY JUDGMENT**

Plaintiff Darla F. appeals the Administrative Law Judge's (ALJ) denial of her application for Supplemental Security Income benefits. She alleges that the ALJ (1) erroneously rejected medical opinions, (2) improperly discredited her testimony and the testimony of lay witnesses, and (3) improperly found that the Commissioner's burden at step five was met. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's Decision.

After reviewing the record and the relevant authority, the Court is fully informed. For the reasons set forth below, the Court finds that the ALJ properly weighed the medical opinions, symptom testimony, and lay witness testimony. The Court further finds that the ALJ properly accounted for Plaintiff's limitations in determining her residual functional capacity (RFC) and therefore did not err at step

ORDER - 1

five. Accordingly, the Court grants the Commissioner's motion for summary judgment and denies Plaintiff's motion for summary judgment.

## I.     BACKGROUND[1]

At the time of her hearing, Plaintiff was 39 years old and lived in Pasco, Washington. Plaintiff graduated from high school and completed some post-secondary school work. Plaintiff has worked as a waitress, a sales clerk, an office manager, and, most recently, a bartender. Plaintiff was terminated from her position as a bartender due to poor performance.

Plaintiff filed an application for Supplemental Security Income (SSI) on December 5, 2012, alleging disability beginning March 31, 2010. AR 18. Her claim was denied initially and upon reconsideration, and Plaintiff requested a hearing. On May 29, 2015, a hearing was held in Spokane, Washington before Administrative Law Judge (ALJ), Moira Ausems. AR 18. The ALJ issued an unfavorable decision. Plaintiff filed a request for review by the Appeals Council, which was denied.

## II.     DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able

to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

# III. ALJ FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2010. AR 20.

At step two, the ALJ concluded that Plaintiff had the following medically determinable severe impairments: attention deficit-hyperactivity disorder; depressive disorder, NOS; anxiety disorder, NOS; methamphetamine abuse in full-sustained remission since July 2012, with ongoing use of alcohol and marijuana abuse; mild lumbar degenerative changes; bilateral carpal tunnel syndrome (20 C.F.R. 404.1520(c) and 416.920(c)). *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 565.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations: Plaintiff can lift or carry twenty pounds occasionally and ten pounds frequently; sit for six hours and stand or walk for six hours, all within an eight hour workday. Plaintiff can, no more than frequently climb ramps and stairs, balance, crouch, crawl, kneel and stoop; never climb ladders, ramps or scaffolds; avoid concentrated exposure to industrial vibration; no exposure to unprotected heights or dangerous moving; no commercial driving; and no more than frequent

bilateral fingering and handling. The Plaintiff can perform work involving no more than lower semiskilled SVP-3 tasks; and interact with the general public no more than brief superficial basis. AR 23.

In determining Plaintiff's physical capacity, the ALJ gave significant weight to the majority of opinions set forth by Dr. Shimoga Prakash, M.D., with the exception of Dr. Prakash's opinion that Plaintiff could sit for only four hours in an eight hour day, which received no weight. AR 25. The ALJ assigned substantial weight to the opinion of state agency medical consultant Dennis Koukol, M.D. and assigned no weight to the opinion of Jared Shelton, PA-C. *Id.*

In determining Plaintiff's mental capacity, the ALJ gave significant weight to the opinion of Jan Kouzes, Ph.D. AR 26. The ALJ also accorded significant weight to the opinions of Dr. Tae-Im Moon, Ph.D., except for Dr. Moon's reporting of a GAF score of 51-55, which received no weight. AR 26–27. The ALJ accorded substantial weight to state agency consultant, Rita Flanagan, Ph.D., and gave no weight to the GAF score of 40 reported by a mental health nurse practitioner. AR 27.

At step five, the ALJ found that Plaintiff is unable to perform any past relevant work and that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 29–30.

# IV.  STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

# V.  ANALYSIS

## A.  The ALJ properly weighed the medical opinion evidence.

Plaintiff argues that the ALJ failed to adequately consider the opinions of examining physicians Dr. Shimoga Prakash and Dr. Roland Dougherty. ECF No. 13 at 9–10. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining physicians)." *Holohan v.*

*Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a nonexamining physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

### 1. Dr. Shimoga Prakash.

Plaintiff argues that the ALJ erred in assigning little weight to Dr. Prakash's opinion that Plaintiff was limited to sitting for four hours in an eight hour day. ECF No. 13 at 10. Dr. Prakash conducted a consultative evaluation of Plaintiff on

September 6, 2012, in connection with her application for Department of Social and Health Services benefits. AR 503–07. Dr. Prakash reported a diagnosis of lumbago but noted no evidence of significant clinical abnormality during physical exam. AR 507. Dr. Prakash additionally noted the lumbar x-ray demonstrated only mild degenerative changes. *Id.* Dr. Prakash categorized the Plaintiff as capable of lifting 30 pounds occasionally and 10 pounds frequently and standing for six hours in an eight-hour day. AR 503. Dr. Prakash additionally categorized Plaintiff as limited to sitting for only four hours in an eight-hour day. *Id.* The ALJ assigned "significant weight" to the majority of Dr. Prakash's opinions, but assigned no weight to his conclusion that Plaintiff was limited to sitting four hours in an eight-hour day on the basis that the opinion is not supported by appropriate medical findings. AR 25.

The ALJ's determination that Dr. Prakash's restriction on Plaintiff's durational sitting is unsupported by the medical findings is supported substantial evidence in the record. Plaintiff's lumbar x-ray revealed only mild degenerative changes. On physical examination, Plaintiff displayed a normal range of motion, normal muscle strength, stability in all extremities with no pain on inspection, and no evidence of significant abnormality. AR 476. The ALJ has therefore provided a sufficiently clear and convincing reason to reject this portion of Dr. Prakash's opinion, and that reason is supported by substantial evidence in the record. Plaintiff's argument that the findings of mild degeneration in her spine could

support a limitation to sitting for four hours is unpersuasive because the Court will not second guess an ALJ's rational findings. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### 2. Dr. Roland Dougherty

On August 6, 2009, Dr. Dougherty conducted a psychological evaluation of Plaintiff for child protective services. AR 412–26. Dr. Dougherty interviewed Plaintiff and conducted several psychological diagnostic exams. Dr. Dougherty concluded that Plaintiff's results suggested the following diagnoses: ADHD, dysthymia, adjustment disorder with depression, alcohol dependence, cannabis use, Narcissistic personality disorder with antisocial personality traits, paranoid personality traits, histrionic personality features, and negativistic personality features. Dr. Dougherty concluded that Plaintiff's prognosis as a parent is "likely to be guarded at best." AR 425.

The ALJ did not consider Dr. Dougherty's opinion, and Plaintiff asserts that this was error. In an unpublished opinion, the Ninth Circuit noted the tension between its case law that "medical opinions that predate the alleged onset of disability are of limited relevance" and the Social Security Regulations' mandate that "the ALJ must consider all medical opinion evidence." *Williams v. Astrue*, 493 F. App'x. 866 (9th Cir. 2012) (first quoting *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); and then quoting *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). On review of the relevant case law in this and other circuits, the Court is persuaded that an ALJ may not reject medical evidence solely because it predates the alleged date of the onset of disability. *See, e.g.*, *McQueen v. Colvin*, No. 3:15-cv-05893-JRC, 2016 WL 4009850 (Jul. 27, 2016 W.D. Wash.) (surveying relevant case law). In some cases, the time elapsed between the medical opinion and the onset may be sufficient to discount its relevance. However, where, as here, the medical opinion evidence is from shortly before the period of alleged disability, the ALJ must provide a basis for rejecting the opinion. The ALJ therefore erred by failing to discuss Dr. Dougherty's medical opinion.

Harmless error analysis applies to Social Security disability cases. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (citing *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011)); *Molina*, 674 F.3d at 1115. "The nature of that application is fact-intensive—'no presumptions operate' and '[the reviewing court] must analyze harmlessness in light of the circumstances of the case.'" *Marsh*, 792 F.3d at 1172 (quoting *Molina*, 674 F.3d at 1121). Accordingly, the Court must consider whether the ALJ's error was "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Molina*, 674 F.3d at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Ninth Circuit "precedents have been cautious about when harmless error

should be found." *Marsh*, 792 F.3d at 1170. "[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

In this case, the ALJ's failure to consider the opinion of Dr. Dougherty was harmless. The ALJ gave significant weight to the findings of Dr. Kouzes, who took into account the diagnoses found by Dr. Dougherty. AR 430. Dr. Kouzes assigned Plaintiff a GAF score of 58–60, which falls within the same range as the GAF score of 55 assigned by Dr. Dougherty. *Id.* Dr. Dougherty's opinion does not provide substantial relevant information outside of the diagnoses accounted for in Dr. Kouzes's report. Dr. Dougherty's evaluation was completed to help determine case planning for the custody of her daughter. Thus, the conclusions reached have to do with Plaintiff's prognosis as a parent and do not contemplate her ability to work or function in the workplace. Given the fact that Dr. Kouzes's opinion incorporated the relevant diagnoses from Dr. Dougherty's report, the Court concludes that the ALJ's analysis would have been the same even if the ALJ had given Dr. Dougherty's opinion full weight. Accordingly, the error was harmless.

**B.      The ALJ did not err in weighing other source testimony.**

An ALJ may consider "other source" testimony from sources such as nurse practitioners, physicians' assistants, and counselors. 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his or her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 13 F.3d 915, 918–19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, the ALJ must provide "reasons that are germane to each witness" and may not simply categorically discredit the testimony. *Id*. at 919.

**1.      Jared Shelton, PA-C**

On October 15, 2010, physician assistant Jared Shelton completed a physical evaluation of Plaintiff for DSHS. AR 501. Shelton noted Plaintiff had right knee pain with a probable ACL tear. *Id.* He indicated this condition imposed moderate to marked limitations on Plaintiff's ability to perform basic work-related activities. *Id.* Shelton therefore concluded that Plaintiff's overall work level was sedentary. *Id.*

The ALJ assigned Shelton's opinion no weight. The ALJ provided two reasons for rejecting the opinion: (1) there was no confirming radiology imaging or objective medical evidence supporting the "probable knee tear" reported by Shelton; and (2) there was no evidence of corresponding treatment or findings documented by other treating medical sources. AR 25.

The ALJ provided specific, germane reasons to discount Shelton's opinion. First, the ALJ correctly noted that there was no corroborating evidence in the medical record to support his diagnosis of a "probable knee tear." Although Plaintiff argues that her reported tenderness over the MCL area and limp when walking support this diagnosis, the fact remains that Shelton's diagnosis is not supported by any imagining or other objective medical evidence.[2] *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (an ALJ can disregard an opinion when the record contains little or no objective evidence of an impairment that would result in the opined limitations). In this same vein, the ALJ also noted that Shelton's conclusions were unsupported by Plaintiff's other medical records. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (an ALJ can disregard an opinion from an "other source" that is inconsistent with other opinion evidence in the record). Accordingly, the ALJ did not err in rejecting Shelton's opinion.

---

[2] Plaintiff asserts that the ALJ was required to further develop the record on the issue of her probable ACL tear. However, the ALJ is required to develop the record only when the onset date is ambiguous or the record is inadequate for the ALJ to make a proper disability determination. Here, the record is not inadequate. Plaintiff saw physicians several times following the October 2010 evaluation by Shelton and there are no additional notes regarding an ACL tear. In addition, Plaintiff's counsel represented to the ALJ at the close of the hearing that the record was fully developed. AR 50.

**C.    The ALJ did not err in finding Plaintiff's symptom testimony not credible.**

Plaintiff asserts that the ALJ erred by discrediting her symptom testimony. The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112. Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti*, 533 F.3d at 1039 (citations omitted). General findings are insufficient. *Lester*, 81 F.3d at 834. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

In making an adverse credibility determination, an ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity,

and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 568. Nonetheless, the ALJ provided specific, clear, and convincing reasons to discount Plaintiff's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

First, the ALJ found that Plaintiff's claims regarding intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical record. AR 24–26. This assessment is supported by substantial evidence. Although Plaintiff alleged she suffered from severe lower back pain, the medical evidence showed only mild degenerative changes. X-rays taken in 2012 and 2014 showed only mild degenerative changes. Physical examinations likewise revealed normal range of motion and muscle strength. Plaintiff also alleged disability due to bilateral hand deformity. However, a February 2017 nerve conduction study showed only mild neuropathy in the wrists. Plaintiff exhibited intact muscle strength and no sensory loss to the hands. AR 529–31. With respect to her mental limitations, examinations during the relevant time-period show that Plaintiff generally displayed normal mood, affect, behavior, speech, judgment, and thought content. AR 482, 535, 542, 544. The ALJ's conclusion that Plaintiff's symptom testimony did not reflect the

objective medical evidence is therefore supported by substantial evidence in the record.

The ALJ also discredited Plaintiff's testimony due to her unexplained lack of treatment. AR 26. An ALJ may reject symptom testimony "if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or record show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Molina*, 674 F.3d at 1113. Here, the ALJ noted that—with the exception of a short period of medication for ADHD—Plaintiff failed to seek mental health treatment during the relevant time-period. At the hearing, the ALJ asked Plaintiff why she had not continued mental health counseling. Plaintiff responded that she had tried medications and that she frequently procrastinated. AR 70–71. The ALJ therefore reasonably discounted Plaintiff's symptom allegations based on her unexplained lack of treatment.

The ALJ also noted that Plaintiff's statements contained numerous inconsistencies. An ALJ may consider prior inconsistent statements concerning symptoms and other testimony by the claimant that appear less than candid when evaluating symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Plaintiff alleged that her impairments prevented her from working, but she reported in May 2010 that she stopped looking for work because she had too many court-ordered appointments. AR 451. That same month, Plaintiff told an evaluating

psychologist "I don't want anyone to write me a letter saying I can't work because I can." AR 433. Plaintiff also reported suffering from hallucinations, but her medical record does not contain any reports of hallucinations or diagnoses that would support this symptom. AR 455, 470, 482, 535, 542, 544.

Finally, the ALJ found that Plaintiff's daily activities undermined her statements regarding the severity of her symptoms. An ALJ may discount a claimant's allegations when "activities [] are incompatible with the severity of the symptoms alleged." *Ghanim*, 763 F.3d at 1165. Although Plaintiff alleged severe pain and numbness in her hands, Plaintiff reported that she prepared meals daily and performed housework and yard work. *Compare* AR 268, 297, *with* AR 75, 270–71, 430. Plaintiff also alleged that she was unable to go anywhere, AR 273, but reported leaving the home daily, driving a car and shopping in stores for groceries, AR 271–72, 430. Plaintiff further reported that she walked down the road to her brother's house to do laundry and went for walks by the river twice each day. *Id.* Thus, the ALJ reasonably concluded that Plaintiff's activities of daily living undermined the severity of the symptoms alleged.

**D.  The ALJ did not err in rejecting the lay witness statement from Plaintiff's former employer.**

Plaintiff's former employer, Angela Disbrow, wrote a letter describing why Plaintiff was terminated from her job as a bartender. AR 304. Disbrow stated that Plaintiff had difficulty keeping track of tasks she needed to perform throughout the

day, had difficulty holding glasses, and struggled to complete tasks correctly in a timely fashion. *Id.* The ALJ assigned little weight to this opinion, stating Disbrow's statements were overgeneralized and provided little functional specificity. AR 29.

An ALJ need only provide germane reasons for rejecting the testimony of a lay witness. *Molina*, 674 F.3d at 1114. The ALJ provided valid reasons to reject Disbrow's testimony. First, the limitations identified by Disbrow pertained to Plaintiff's ability to perform the job of a bartender. The ALJ found that Plaintiff was unable to perform her past relevant work, including the work of bartender. To the extend Disbrow's statement was intended to reflect Plaintiff's capacity to perform other work, the ALJ correctly concluded that the statements were too general. *See Meanel*, 172 F.3d at 1114 (a "mere statement that [claimant] experienced some diminution in her concentration skills falls short of an informed opinion that [claimant's] pain and diminished concentration skills would significantly interfere with her ability to work."). The ALJ therefore did not err in rejecting Disbrow's testimony.

**E.     Substantial evidence supports the ALJ's step five finding.**

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations. *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995); see also 20 C.F.R. § 416.920(g). At an administrative hearing, an ALJ may

solicit vocational expert (VE) testimony as to the availability of jobs in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). A VE's testimony may constitute substantial evidence of the number of jobs that exist in the national economy. *Bayliss*, 427 F.3d at 1218. The ALJ's decision regarding the numerosity of alternative occupations must be supported by substantial evidence. *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013). The ALJ's step five findings cannot stand where "no reasonable mind could accept the employment numbers proffered by the VE as substantial evidence. *Id.* ("A reasonable mind would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy.").

Here, the VE testified that Plaintiff could perform the following occupations: (1) checker I, (DOT #222.687-010), light, unskilled, SVP-2, with approximately 150,000 jobs in the national economy; (2) hand packers and packagers, with representative title of packing line worker, (DOT #253.687-038), light, SVP-2, with 250,000 jobs nationally; (3) cleaner-housekeeping, (DOT #323.687-014), light, unskilled, SVP-2, with approximately 205,000 jobs nationally. AR 30.

Plaintiff argues that the ALJ's hypothetical failed to take into account the limitations set forth by Drs. Prakash and Dougherty, Shelton, and Disbrow. ECF No. 13 at 18. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical

properly accounted for the limitations supported by the record. See *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

Plaintiff also asserts that the ALJ erred by failing to account for the limitations opined by examining psychologist Tae-Im Moon, Ph.D. in the RFC finding. Dr. Moon found that Plaintiff had moderate limitations in a number of mental categories impacting her ability to do the following: (1) understand, remember and persist in tasks by following detailed instructions, (2) learn new tasks, (3) perform routine tasks without special supervision, (4) adapt to changes in a routine work setting, (5) communicate and perform effectively in a work setting, (6) complete a normal work day and work week without interruptions from psychologically based symptoms, and (7) set realistic goals and plan independently. AR 525.

There is no obvious inconsistency between Dr. Moon's opinions regarding Plaintiff's mental limitations and the ALJ's RFC determination. The ALJ limited Plaintiff to work involving no more than lower semiskilled SVP-3 tasks with no more than brief, superficial interaction with the general public. This limitation incorporates the moderate limitations noted by Dr. Moon. The ALJ was not required to individually reference each of the moderate limitations Dr. Moon marked or

provide for them verbatim in the RFC. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ does not need to discuss every piece of evidence when interpreting the record); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (finding the ALJ properly accounted for claimant's moderate mental limitations in concentration and pace and other areas by restricting her to simple work). The ALJ therefore properly accounted for the limitations identified by Dr. Moon in determining Plaintiff's RFC.

## VI.    CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

**2.**    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

**3.**    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

**4.**    **JUDGMENT** is to be entered in the Commissioner's favor.

**5.**    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 6th day of July 2018.

SALVADOR MENDOZA, JR.
United States District Judge